*proferentem.*[9] Here, Korab drafted the accord and satisfaction language without input from Axion. Korab Depo 14, 45, PA C. Korab could have placed the term "known or unknown" into his boilerplate accord and satisfaction provision but failed to do so. [10]

Because Axion did not know of the Government's superior knowledge regarding the air gun at the time that Axion signed P00017, P00019, and P00020, the accord and satisfaction terms do not apply to Counts II, XIX and XXI. Further, because Axion did not know of the Government's misrepresentation regarding the air gun at the time that Axion signed P00017, P00019, and P00020, the accord and satisfaction terms do not apply to Count III. Moreover, in his deposition, Korab acknowledged that he did not know of any grounds for a claim by Axion that the Government had violated its duty to cooperate:

> A. No, my position was the government did not breach any duty to cooperate.
> Q. Did you ever have any suspicion that you might have breached it?
> A. No.

Korab Depo 35, PA C. Since Korab did not know of the basis for the claim, as shown by the above analysis, the breach of the implied duty to cooperate was an "unknown." Unknown matters were not included in the accord and satisfaction modifications. Whether the Government actually breached a duty to cooperate is an issue of fact to be decided by the fact-finder at trial; but, it is clear that the accord and satisfaction defense of the Government does not apply to claims based upon allegations of breaches of its duty to cooperate.

---

9 In the absence of sufficient factual allegations supporting the parties' mutual intent, the Federal Circuit construes ambiguous contract provisions against the drafter. *See Studiengesellschaft Kohle, M.B.H. v. Hercules, Inc.*, 105 F.3d 629, 634, 41 U.S.P.Q.2d 1518 (Fed. Cir. 1997).

10 For an example of a release that included the term "known or unknown," *see Neal and Company, Inc.*, DOT No. 2984, 90-2 BCA ¶ 22789.

Finally, because at the time that Axion signed P00017, P00019, and P00020, Axion did not know of the Government's superior knowledge regarding PS-115 corrosion problems, the accord and satisfaction provisions do not apply to Counts VII, IX, or XXVI.

3. **Misrepresentations Regarding Air Gun.**

A misrepresentation by a defendant voids the accord and satisfaction defense of the defendant. *C & H Commercial Contractors, Inc. v. United States*, 35 Fed. Cl. 246, 251, 40 Cont.Cas.Fed. (CCH) P 76,922 (1996) ("However, we further conclude that the modifications were procured through the government's misrepresentations which render the releases voidable."). As explained earlier, the Government made certain misrepresentations regarding the air gun. Because of these misrepresentations, the Government should be precluded as a matter of law from relying upon the accord and satisfaction defense with regard to the claims in Counts III and XXII.

Alternatively, a misrepresentation by the Government provides a basis for the forum to reform the contract:

> A misrepresentation is 'an assertion that is not in accordance with the facts.' RESTATEMENT (SECOND) OF CONTRACTS § 159 (1979). In some cases nondisclosure of a fact are equivalent to such an assertion. A misrepresentation may … be grounds for reformation.

*Defense Systems Company, Inc.*, ASBCA No. 50,918, 01-1 BCA ¶ 31,152.

4. **Implied Warranty.**

An implied warranty is a judicially created means of assuring that the Government does not attempt to improperly shift risks to the vendor. Once the allocation of risk is established, as a matter of public policy by either the FAR or a court, a contracting officer has no authority to change the allocation of risk that is contrary to public policy through terms of the contract. *See generally, Vought Aircraft*, ASBCA No. 47,357, 00-1 BCA ¶ 30,721.

Here, Korab attempted to do indirectly what he could not do directly—use a broad accord and satisfaction provision to shift responsibility to a contractor to perform development work notwithstanding that the solicitation represented that the fixed price contract was to manufacture PS-115s using level III drawings. Hahin Depo 70, PA B. Because Korab lacked the authority to change the allocation of risk regarding the implied warranty that the air gun was not developmental, the defense of accord and satisfaction does not apply to Count IV.

5. **Duty to Cooperate.**

According to the ASBCA, "[t]he implied duty to cooperate imposes an affirmative obligation to do what is reasonably necessary to enable the contractor to perform." *Contel Advanced Systems, Inc.* ASBCA No. 49,074 03-1 BCA ¶ 32,155. Stated differently, Korab did not put the implied duty to cooperate in the contract—neither can he take it out. Thus, Defendant should be precluded, as a matter of law, from asserting the accord and satisfaction defense with regard to Count V.

The implied duty to cooperate is imposed by courts and board consistent with their inherent powers to achieve fairness and justice.

> This equitable remedy is to "relieve a litigant in a proper case from the legal hardship of a document to which he has committed himself inadvertently and without comprehension of its effect upon his rights. The invention of the remedy of equity was a recognition that a legal document, however, formal, just, in some circumstances give way to fairness and justice."

*The Boeing Company*, ASBCA No. 52,256, 02-1 BCA ¶ 31, 811 (*citing Harrison Engineers and Construction Corp. v. United States*, 107 Ct.Cl. 205, 68 F.Supp 350 (1946)). Here, Latifi signed the accord and satisfaction modifications believing the legalistic language meant he was not entitled to any compensation or claims for performing the second FAT. Latifi Decl ¶ 10, PA A. The result was an extreme hardship to Axion. Clearly, under these inequitable facts,

the Court should not permit the accord and satisfaction prose to exculpate the Government from its implied duty to cooperate.

6. **Mutual Mistake.**

Mutual mistake negates a release with regard to Count XXV, the Defendant should be precluded, as a matter of law, from asserting this defense. Hahin has acknowledged the mutual mistake:

> Q: Let's go back to when the contract was awarded. Even though you weren't there in the early part of it, is it fair to say that when the Navy awarded this contract to Axion, the Navy didn't anticipate that Axion would have to do a significant development effort?
>
> A. Yes.

Hahin Depo 72-3, PA B.

In *The Boeing Company*, ASBCA No. 52,256, 02-1 BCA ¶ 31,811, the parties had closed out a contract, but payment for the facilities capital cost of money ("FCCM") had not been inserted into the final calculation of amount notwithstanding the parties intended the final amount to include FCCM. The Government asserted the defense of accord and satisfaction. The ASBCA held that notwithstanding the accord and satisfaction terms, the contract could be reformed based on the mutual mistake.

The bottom line is that the court's equitable power can trump any accord and satisfaction provision in a contract:

> This equitable remedy is to "relieve a litigant in a proper case from the legal hardship of a document to which he has committed himself inadvertently and without comprehension of its effect upon his rights. The invention of the remedy of equity was a recognition that a legal document, however, formal, just, in some circumstances give way to fairness and justice." *Harrison Engineers*, 107 Ct.Cl. 208, 68 F.Supp 350 (1946).

*The Boeing Company*, supra. Here, Axion "inadvertently and without comprehension of its effect" signed the accord and satisfaction modifications. The net result is an extreme hardship to

Axion. Clearly, these facts present a situation where the accord and satisfaction provision should be rendered ineffective by an equitable remedy.

7. **The Spearin Doctrine.**

Under the *Spearin* Doctrine, the Government guarantees that a contractor will be able to render satisfactory performance if it follows the specifications furnished by the Government. *United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166, (1918). Put in perspective, the *Spearin* Doctrine is a judicially established risk shifting provision. The government benefits from this risk shifting because vendors do not insert into their fixed prices contingencies that a production contract will actually require R&D.

A contracting officer has no authority to change the allocation of risk set as a matter of public policy by either the FAR or a court. *See generally, Vought Aircraft*, ASBCA No. 47,357, 00-1 BCA ¶ 30,721. Here, Korab attempted to do indirectly what he could not do directly—use a broad accord and satisfaction provision to shift responsibility to a contractor to perform R&D work under a production contract. Because Korab lacked the authority to change the allocation of risk for a fixed price production contract, the defense of accord and satisfaction does not apply to Counts XV, XXVII, and XXIX.

8. **The "Second First Article Test".**

According to Korab, the accord and satisfaction modifications were never intended to apply to prospectively. Korab Depo 28, PA C. The facts involving the Second FAT occurred several months after the accord and satisfaction modifications were signed. Surely, the Government is not suggesting the accord and satisfaction modifications gave the Government the right to commit future breaches of the contract with impunity. Hence, the defense of accord and

satisfaction does not apply to prospective matters and does not apply to Counts IX, X, XI, XII, XIII, XIV, and XVI.

9. **Routine Requests for Payment – FAR § 52.245-18.**

The accord and satisfaction phrase "all claims, demands, or causes of action" does not mention routine requests for payment. During his deposition, Korab acknowledged that the above phrase does not apply to routine requests for payment. Korab Depo 27-28, PA C. Furthermore, in his deposition, Korab indicated that any duty on the part of the Navy to compensate Axion pursuant to FAR § 52.245-18 was never considered by him when he executed the accord and satisfaction modifications. Korab Depo 25, PA C. Thus, the accord and satisfaction defense cannot apply to Count XVIII.

10. **Continuing Obligations – Superior Knowledge and Duty to Cooperate.**

Continuing contracts are described as follows:

> There are contracts, however, that have been said to require continuing (or continuous) performance for some specified period of time, a period that may be definite or indefinite when the contract is made. These contracts too are capable of a series of "partial" breaches, as well as of a single total breach by repudiation or by such a material failure of performance when due as to go "to the essence" and to frustrate substantially the purpose for which the contract was agreed to by the injured party. For each "partial" breach a separate action is maintainable, just as in the case of an "installment" contract; and for a series of "partial" breaches occurring before any action is brought only one action is maintainable.

*San Carlos Irrigation and Drainage District, supra.* Here, the contract obligation continued after the accord and satisfaction modifications were signed. Since the Contracting Officer interprets the accord and satisfaction provisions as not applying prospectively, the obligations of the parties continued. Thus, the accord and satisfaction defense cannot be applied to Counts V, VII, XII, XXI, XXIV, or XXVIII.

**CONCLUSION**

The Government's Partial Motion to Dismiss for Lack of Jurisdiction, or in the Alternative Motion for Partial Summary Judgment, is based on its argument that the relevant counts of Axion's Complaint are barred by the statute of limitations. This argument rests solely on the Government's conclusory, unsupported assertion that Axion's claims accrued in 1996. The Government made this assertion without reference to any supporting facts whatsoever. In this brief, Axion has established, on numerous alternative grounds, that, at the very least, genuine issues of material fact exist as to the correct date of accrual of Axion's claims. Therefore, the Government's Motion to Dismiss, and Alternative Motion for Summary Judgment, are due to be denied.

Further, the Government's Motion for Partial Summary Judgment based on laches must fail due to the Government's complete failure to produce any evidence of prejudice to the Government. In fact, the official memorandum by the Contracting Officer justifying the termination for default stated that the Government no longer even had a requirement for PS-115 power supplies at the time of the termination.

Finally, the accord and satisfaction provisions contained in Modifications P00017, P00019, and P00020 are unenforceable as a matter of law due to failure of consideration and a unilateral mistake by Axion that was either known or should have been known by the Contracting Officer. Therefore, Axion is entitled to partial summary judgment that the accord and satisfaction provisions contained in these modifications are unenforceable as a matter of law.

For the foregoing reasons, the Government's Partial Motion to Dismiss, or in the Alternative Partial Motion for Summary Judgment, is due to be denied. Further, Axion's Cross-Motion for Partial Summary Judgment is due to be granted.

Dated this the 12th day of May, 2005.

**ATTORNEY OF RECORD:**

**RICHARD J.R. RALEIGH JR.**
**WILMER & LEE, P.A.**
100 Washington Street, Suite 200
Huntsville, Alabama 35801
(256) 533-0202 Telephone
(256) 533-0302 Facsimile
rraleigh@wilmerlee.com
**OF COUNSEL:**

**JEROME S. GABIG, JR.**
4811 Cove Creek Drive
Brownsboro, AL 35741
(256) 509-0279 Telephone
(256) 512-0020 Facsimile
gabig3@comcast.net

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished this 12th day of May, 2005, by U.S. Mail, postage prepaid and properly addressed to:

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St., N.W.
Washington, D.C. 20530

Richard Martinelli
Office of Counsel
Naval Inventory Control Point
Mechanicsburg, PA 17055-0788

**OF COUNSEL**