AXION CORPORATION

TELEPHONE: (256) 851-9770
FAX: (256) 851-9771

November 13, 2000

Naval Inventory Control Point-Mechanicsburg
5450 Carlisle Pike
Mechanicsburg, PA 17055-0788
Attn: John Korab

**RE: N00104-96-C-KA09**

Dear Mr. Korab

In reference to the above contract, please be advised that we have produced approximately 6800 ampule assemblies. And we have over 10,000 bromide cans assembled and other sub-assemblies complete for over 50,00 units. Per our contract we have received OD1832 plating guideline. The scope of this guideline is to provide preparation, manufacturing and quality control of preserved energizer lead dioxide electrode stock in a continuous strip and batch stock plating operation. The guideline is providing Axion with current density, plating time, solution mix and flow rate and temperature. We have spent 1 week on lead plating solution and one 1 week on lead dioxide plating solution and 1 week on acetate lead dioxide plating trying to make a solution to Government specifications and be able to pass the required sell test. We were unable to do so. Our chemist and a factory chemical representative came to the conclusion that the amount per ounce or gram given by the Government document for each element solution was not correct and completely off. Therefore we have spent the past 2 weeks and have mixed the 3 solutions with help from the chemical representative and our chemist to find the correct amount of mixture for each solution. We have plated and ran sample sell test, 5 sets of tests were preformed for verification and clearly show that we exceed the sell test requirement and matched sell sample test that we had in stock.

The documents provide us current density and plating time, based on 4 foot per minute travel time and 109 ASF for lead plating and 69 ASF for lead dioxide plating and 13.2 ASF for lead acetate plating. Our plating line has been designed base on above current density and was designed to run 4 foot per minute and we have purchased rectifiers to provide the required ASF for each solution. This past Thursday and Friday that we ran the machine we find out the ASF called out by the Government was not adequate. Therefore we have no choice but to purchase a larger rectifier. We intend to move down our rectifiers by using 109 ASF on 69 ASF call out and 69 ASF call out in place of 13.2 ASF call out and purchase 1 larger rectifier for the lead plate

solution. We intend to find a rectifier as soon as possible and have it shipped to our site the fastest possible way. We have already lost 5 weeks of our time trying to correct the Government document. We are not asking for the costs incurred to Axion, nor are we asking for the cost of a rectifier. It will take time to purchase chemicals again and a rectifier, and after that we need plating time. We request that Axion be compensated for the lost time of the 5 weeks, 1 week for mixing the chemicals and running the test, and 2 weeks for finding a rectifier, receiving and installing it, for a total of 8 weeks. And this estimate is cutting it really close. We have shown the problem to the Government inspector, Mr. Henry Stickrod. I apologize for not getting back to you earlier, but it was necessary to ensure we had properly prepared and tested each solution and received the correct result, so our position could be clear before reporting to you.

We appreciate your help and cooperation in this matter. Should you have any questions, kindly contact the undersigned.

Sincerely,

Alex Latifi
President,
Axion Corporation

317 Nick Fitcheard Road • Huntsville, Alabama 35630
www.axioncorporation.com • axion@sprintmail.com

**DEPARTMENT OF THE NAVY**
NAVAL INVENTORY CONTROL POINT
700 ROBBINS AVENUE
PHILADELPHIA PA 19111-5098
5450 CARLISLE PIKE - PO BOX 2020
MECHANICSBURG PA 17055-0788

IN REPLY REFER TO:

Ser 0242.6
N00104-96-C-KA09
November 22, 2000

Axion Corporation
317 Nick Fitcheard Road
Huntsville, AL 35630

Dear Mr. Latifi:

The following is in response to Axion's letter of November 13,2000 that asserted Axion lost five weeks time trying to correct the Government's document OD 18332. The Government takes strong exception to Axion's position especially since the document has been in circulation since 1967.

The OD 18332 is provided as a guideline and does not preclude the contractor from altering the process to suit the contractor's particular manufacturing process.

It is recommended that Axion proceed with production utilizing the available equipment on-hand at one foot per minute line speed until the rectifier needed to run at the higher rate of four feet per minute is received from the supplier. Axion has stated that the material can be produced by using the slower line speed. Axion planned to use a commercial plater at the beginning of the contract. It is not the Government's fault that Axion decided to undertake the plating process.

The Government is looking forward to Axion producing the Power Supply PS-115.

Sincerely,

John Korab

John Korab
Contracting Officer

Cc: J.Hahin
J.Ellis

solution. We intend to find a rectifier as soon as possible and have it shipped to our site the fastest possible way. We have already lost 5 weeks of our time trying to correct the Government document. We are not asking for the costs incurred to Axion, nor are we asking for the cost of a rectifier. It will take time to purchase chemicals again and a rectifier, and after that we need plating time. We request that Axion be compensated for the lost time of the 5 weeks, 1 week for mixing the chemicals and running the test, and 2 weeks for finding a rectifier, receiving and installing it, for a total of 8 weeks. And this estimate is cutting it really close. We have shown the problem to the Government inspector, Mr. Henry Stickrod. I apologize for not getting back to you earlier, but it was necessary to ensure we had properly prepared and tested each solution and received the correct result, so our position could be clear before reporting to you.

We appreciate your help and cooperation in this matter. Should you have any questions, kindly contact the undersigned.

Sincerely,

Alex Latifi
President,
Axion Corporation



317 Nick Fitcheard Road • Huntsville, Alabama 35630
www.axioncorporation.com • axion@sprintmail.com

AXION CORPORATION

Innovation is our business.

8/27/01

Naval Inventory Control Point – Mechanicsburg
5450 Carlisle Pike
Mechanicsburg, PA 17055-0788
Attn: John Korab

**RE: N00104-96-C-KA09**

Dear Mr. Korab:

In reference to the above contract, as you know:

1. Axion has improved the product, by developing the complete Air Gun and complete automated wireless data collection by developing a 1- inch by 2 –inch computer placed on board of "flying Bird" to collect the data.

2. Axion has improved the basic plating process by using pure nickel instead of steel plated nickel by doing this and developing a new automated plating line Axion has been able to improve the charge from 9 min. to 18 min., which will provide the Government with a long range operating capability.

The design requires Axion to put Acid in copper cans, which is a chemical fact, the acid will eventually dislove the copper. We are experiencing this phenomenon at this time. We have over thousands of copper cans that have been filled with acid and welded and started leaking on the surface of the diaphragms. We had discussion with Mr. Carey Jackson Quality Assurance Manager, of CP/PHIBROCHEM, the approved source of supply of the acid (34-A, Electrolyte). He states that it is a fact that this acid will eventually penetrate the copper. CP/Phibrochem ships the acid in polyethylene containers, which can survive indefinitely without any leakage. Axion has produced polyethylene cans and filled with acid and sealed and clearly there has been no leakage. We wish to submit a VCP or ECP to the government, and suggest that changing from copper cans to polyethylene cans this will solve any leakage problem, that the government may have experienced infield and will stop any future occurrence.

Were producing 400 units per day, but within a short period of time our production can go up to 1,000 units per day. The time that is required for change over is very nominal and the cost is fractional with compared to the losses of product. Allowing the government ability to store the finished product for long period of time without experiencing any leakage. This change would complete this product and bring it to near perfection. Axion has done some study on making the polyethylene can, with small modification to the equipment Axion can put the polyethylene can on

10



317 Nick Fitcheard Road • Huntsville, Alabama 35806 • Tel: 256.851.9770 • Fax: 256.851.9771 • e-mail: axion@pgtv.net

production line within a short period of time. Were are manufacturing with the cooper can, please advise us if we should continue. We are open for any meeting and discussion at your convince.

We appreciate your help and cooperation in this matter. Should you have any questions, please kindly contact the undersigned.

Sincerely,

Alex Latifi
President
Axion Corporation

lsr

| INFORMATION AND/OR ACTION (A .ERNATE) (REV 1/84) (LOCAL) | CODE: 0242.6/JK | DATE: September 18, 2001 |
|---|---|---|

FROM: NAVICP-M

| TO: | CONTRACT/ORDER NO. N00104-96-C-KA09 |
|---|---|
| AXION CORPORATION<br>317 FITCHEARD ROAD<br>HUNTSVILLE AL 35806 | SUBJECT:<br>Power Supply, PS115 |

Ref: (a) Axion letter of August 22,2001

(b)
(c)

Encl: (1) Memo of September 6, 2001, NSWC, Crane Div..
(2)

Attachment (1) is being forwarded as a response to reference(a)

| COPY TO: | |
|---|---|
| J. Ellis, NALC<br>J. Hahin, NSWC. Crane Div. | John Korab<br>John Korab<br>CONTRACTING OFFICER |

DEPARTMENT OF THE NAVY
CRANE DIVISION
NAVAL SURFACE WARFARE CENTER
300 HIGHWAY 361
CRANE INDIANA 47522-5000

IN REPLY REFER TO:
8000
Ser 402/1148

6 SEP 2001

From: Commander, Crane Division, Naval Surface Warfare Center
To: Commanding Officer, Naval Ammunition Logistics Center (Code 32J)

Subj: RESPONSE TO AXION CORPORATION LETTER REGARDING PRODUCTION OF PS115 RESERVE ENRGIZERS ON CONTRACT N00104-96-C-KA09

Ref: (a) Axion Corporation ltr of 27 Aug 01

1. In response to reference (a), the Government does not agree with the allegations set forth by the contractor regarding reaction of fluoboric acid with copper. The United States Army has produced thousands of energizers utilizing this technology. Storage/shelf life tests have been performed on these energizers with no noticeable signs of copper degradation or energizer performance.

2. However, fluoboric acid when combined with methylene bromide has proved to have a corrosive effect on copper. A previous version of the PS115 Reserve Energizer did not isolate the methylene bromide from the fluoboric acid and during quality evaluation tests a significant number of reserve energizers experienced leakage. Corrective action was taken to isolate the methylene bromide from the fluoboric acid by encapsulating the methylene bromide in an ampule surrounded in a larger ampule with the fluoboric acid. This design has been utilized successfully on previous contracts and there remain a significant number of PS115 Reserve Energizers in inventory.

3. This was the design provided to Axion Corporation to build the energizers as set forth in Contract N00104-96-C-KA09. While a change in material from copper to polyethylene may eliminate the contractor leakage problem, this is a significant change to the design of the energizer and would require re-submission of First Article Test samples. The Government is willing to meet with the contractor to inspect and discuss the leakage problem and will entertain potential solutions.

4. NAVSURFWARCENDIV Crane point of contact is Mr. J.R. Hahin. Code 4025, telephone DSN 482-5652 or 812-854-5652.

Karen Whorrall
KAREN WHORRALL
By direction

Copy to: NALC Mechanicsburg (Code 0242.6)



Enclosure (1)

DEPARTMENT OF THE NAV
CRANE DIVISION
NAVAL SURFACE WARFARE CENTER
300 HIGHWAY 361
CRANE INDIANA 47522-5000

IN REPLY REFER TO:
8000
Ser 402/1149

18 SEP 2001

From: Commander, Crane Division, Naval Surface Warfare Center
To: Commanding Officer, Naval Ammunition Logistics Center (Code 32J)

Subj: RESPONSE TO AXION CORPORATION LETTER REGARDING PRODUCTION OF PS115 RESERVE ENRGIZERS ON CONTRACT N00104-96-C-KA09

Ref: (a) Axion Corporation ltr of 22 Aug 01

1. This letter is sent in response to reference (a). The tools outlined in reference (a) item number one are necessary and have been verified to be present at the contractor's facility.

2. The automated equipment and chemical dispensing automation identified in item numbers two and three of reference (a) are useful for large-scale production, but were not required by this contract to produce these reserve energizers.

3. The air gun test fixture and automated data collection system identified in item number four of reference (a) were developed at the discretion of the contractor. The technical data provided an air gun test fixture and data collection system design that was utilized on all previous contracts.

4. The last item, number five, of reference (a) is a plating factory/facility. The contractor did not have to build a new plating facility since plate stock was available from other sources. The contractor procured plated material from a vendor that was used to build the First Article Test (FAT) samples. This plate stock provided excellent results during FAT. The decision by the contractor to develop a plating facility has caused significant delay in production of the energizers. No reserve energizers have been produced since the FAT samples.

5. This contract was awarded in 1995. Authorization to proceed into production was granted in May 1999. Numerous delays were experienced due to the fact the contractor elected to design and build a new air gun test fixture and data collection system. More delays were encountered as the contractor went through the pains of developing a new plating facility.

6. The contractor made two changes without properly notifying the Government. First, the contractor utilized pure nickel in lieu of nickel plated onto steel as called for in the technical data package. Secondly, the contractor decided to

Subj: RESPONSE TO AXION CORPORATION LETTER REGARDING PRODUCTION OF PS115 RESERVE ENRGIZERS ON CONTRACT N00104-96-C-KA09

set-up a plating line to plate material for production after approval was given by the Government to proceed into production. The FA energizers utilized plate stock provided by a vendor. Under normal circumstances, any manufacturing change made after FAT invalidates the results and requires new FA samples to be produced and tested in order to provide assurance that the manufacturing change did not compromise the quality of the product. However, due to the significant delays in production on this contract, the Government decided to allow the contractor to proceed into production without requiring another FA. This decision was based on the fact the plate stock is tested for electrical storage potential in a cell test before it is utilized in the energizer.

7. This contract was awarded in December 1995 and as of this date no production deliveries have been received from the contractor. This is nearly six years after the contract was awarded to Axion Corporation. The funding utilized for this contract expires at the end of this fiscal year and the Government is concerned whether any deliverables will be received before this time. The contractor has not shown significant progress since authorization to proceed into production was provided in May 1999.

8. A recommendation is hereby provided to pursue one of the two proposals set forth below. The first proposal is to terminate the contract for default. The second is to terminate the contract for the convenience of both parties along with requiring the contractor to produce the first lot energizers and perform Lot Acceptance Testing (LAT) of this lot before the end of the Fiscal Year. This lot will be accepted contingent upon the energizers passing LAT. The contractor will also be required to provide level two drawings of the air gun fixture and associated test hardware along with level two drawings of the proposed polyethylene ampule design.

9. NAVSURFWARCENDIV Crane point of contact is Mr. J. R. Hahin, Code 4025, telephone DSN 482-5652 or 812-854-5652.

Karen Whorrall

KAREN WHORRALL
By direction

Copy to:
NALC Mechanicsburg (Code 0242.6)

DEPARTMENT OF THE NAVY
NAVAL INVENTORY CONTROL POINT
700 ROBBINS AVENUE
PHILADELPHIA PA 19111-5098
5450 CARLISLE PIKE - PO BOX 2020
MECHANICSBURG PA 17055-0788

IN REPLY REFER TO:

Ser: 0242.6/JK
N00104-96-C-K09
November 01, 2001

BY FACSIMILE

Axion Corporation
P O Box 5366
317 Nick Fitcheard Road
Huntsville, Al 35806

Gentlemen:

Reference is made to contract N00104-96-C-K09. Item 0001AB, 120 each, (First Article ) was due for delivery on October 03, 2001. Our records indicate that delivery has not been made to date.

Since you have failed to perform the subject contract within the time required by the terms thereof, the Government is considering terminating said contract pursuant to Federal Acquisition Regulation (FAR) 52.259-8 entitled "Default." Pending a final decision in this matter, it will be necessary to determine whether your failure to perform arose out of causes beyond your control and without fault or negligence on your part. Accordingly, you are hereby afforded the opportunity to present, in writing, any facts bearing on the question to Commanding Officer, Naval Inventory Control Point, Code 0242.6, 5450 Carlisle Pike, P.O. Box 2020, Mechanicsburg, PA 17055-0788, within ten (10) days after receipt of this notice. Your failure to present any excuses within this time may be considered as an admission that none exits, your attention is invited to the respective rights of the Contractor and the Government under FAR 52.249-8 "Default" and the liabilities that may be invoked in the event a decision is made to terminated for default of the Contractor.
Any assistance rendered to you on this contract or acceptance by the Government of delinquent goods or services hereunder, will be solely for the purpose of mitigating damages, and is not to be construed as any intention on the part of the Government to condone any delinquency, or as a waiver of any rights the Government may have under subject contract.

Sincerely,

John Korab
Contracting Officer

cc: DCMC Birmingham
SBA Atlanta
NSWC Crane Div
NALC 32J

**DEPARTMENT OF THE NAVY**
NAVAL INVENTORY CONTROL POINT
700 ROBBINS AVENUE
PHILADELPHIA PA 19111-5098
5450 CARLISLE PIKE - PO BOX 2020
MECHANICSBURG PA 17055-0788

IN REPLY REFER TO:

Ser 0242.6
N00104-96-C-KA09
December 13, 2001

Axion Corporation
Attn: Alex LaTifi
317 Fitcheard Road
Huntsvillle, AL 35806

Dear Mr. LaTifi:

The Contracting Officer has received information that First Article testing for the Power Supply has been delayed due to malfunctioning equipment.

If a contractor is responsible for the manufacturing and testing of material, the Navy expects that the contractor will meticulously undertake the responsibility in order to fulfill the contractor's obligation.

In view of the fact that Axion has received several hundred thousand dollars in progress payments, the Contacting Officer, Program Office, and all Government employees involved in Axion's contract are extremely disappointed and disillusioned with Axion's capability to execute contract N00104-96-C-KA09.

Axion's lack of progress, and apparent deficiency in being able to conduct the First Article test, leads the Contacting Officer to believe that Axion is incapable of producing and delivering the PS-115, Power Supply under the instant contract.

Therefore, this letter is a request for assurance that Axion has the expertise, resources, commitment, and ability to conduct the First Article testing in a professional manner to finally proceed toward the full execution of the contract. Axion shall respond within 10 days with its solution to rectify the current First Article setback.

Sincerely,

John Korab
Contracting Officer

Cc: NSWC, Crane
NALC, Mechanicsburg
DCM, Birmingham
SBA, Atlanta

DEPARTMENT OF THE NAVY
NAVAL INVENTORY CONTROL POINT
700 ROBBINS AVENUE
PHILADELPHIA PA 19111-5098
5450 CARLISLE PIKE - PO BOX 2020
MECHANICSBURG PA 17055-0788

IN REPLY REFER TO:

Ser 0242.6
N00104-96-C-KA09
April 30, 2002

Axion Corporation
Attn: Mr.Alex Latifi, President
371 Fitcheard Road
Huntsville, AL 35806

Dear Mr. Latifi:

It has come to the attention of the Contracting Officer that Axion Corporation (AXION) has not tested any First Articles due to repetitive test equipment failure(s). This situation is most serious in that Axion has not been able to test the PS-115 Power Supply successfully due to malfunctioning test equipment for the past 4 to 6 months. The Navy does not have confidence in Axion's capability to produce the PS-115 Power Supply without a successful First Article Test.

Axion shall respond in writing within five (5) days and provide a detailed description that describes the remedial action that Axion will undertake to rectify the inadequate First Article Test equipment.

If you have any questions, contact me at 717-605-2027.

Sincerely,

John Korab
Contracting Officer

cc: Jerry Hahin, NSWC Crane
J. Ellis, NALC, Mechanicsburg
DCM, Birmingham

AXION CORPORATION

*Innovation is our business.*

September 9, 2002

Mr. John Korab
Naval Inventory Control Point – Mechanicsburg
5450 Carlisle Pike
P.O. Box 2020
Mechanicsburg, PA 17055-2020

RE: Contract N00104-96-C-KA09

Dear John:

In reference to the above contract regarding the first article test performance, please be advised that Axion Corporation has performed tests on 127 units that were submitted to the environmental testing requirements listed below.

1. 7' drop
2. Transportation vibration
3. Minus 40-degree temperature
4. Plus 140-degree temperature

Under the presence of DCMA quality assurance representatives, the units were tested at the above temperature and data collected from 74 units were activated and good data were collected. The copies of the collected data are on floppy disks, which, per your instructions, will be sent overnight to Jerry Hahin for his review.

Please advise.

Thank you for your help and cooperation with this matter. If you should have any questions, please contact the undersigned at 256-851-9770.

Sincerely,

Alex Latifi
President
Axion Corporation

317 Nick Fitcheard Road • Huntsville, Alabama 35806 • Tel: 256 851 9770 • Fax: 256 851 9771 • e-mail: axion@pgtv.net

**DEPARTMENT OF THE NAVY**
NAVAL INVENTORY CONTROL POINT
700 ROBBINS AVENUE
PHILADELPHIA PA 19111-5098
5450 CARLISLE PIKE - PO BOX 2020
MECHANICSBURG PA 17055-0788

IN REPLY REFER TO:

Ser 0242.6
N00104-96-C-KA09
October 1, 2002

Axion Corporation
Alex Latifi, President
317 Nick Fitcheard Road
Huntsville, AL 35806

Dear Mr. Latifi:

By letter of September 09, 2002, Axion forwarded a First Article Test (FAT) Data Table under contract N00104-96-C-KA09. The FAT consisted of five floppy discs that contained data files from reserve energizer function tests, along with a brief description of the number of reserve energizers tested, number of reserve energizers with good data collected, and a list of environmental tests that the reserve energizers underwent.

Contract modification P00017 required that 120 reserve energizers be function tested. The 120 reserve energizers were to be tested in accordance with Drawing 11744726 for the FAT. The floppy discs contain only 66 separate records, and the five floppy discs contain a total of 84 data files. However, there are 18 duplicitous records. Some of these files have the same name, but are on different discs, while others have different names, but the data in each file are identical. Each of the files with different names are linked to each other in the FAT Data Table.

The contract also required that the reserve energizers be subjected to certain environmental tests before function. Axion's September 09, 2002 letter and the floppy discs data files do not provide any information on which environmental tests each reserve energizer went through.

A FAT report is required by the contract. The format and information required in the FAT report are identified in the Contract Data Requirements List (CDRL) A004 and the Data Item Description (DID) Identification Number DI-NDTI-80809A. Axion's letter of September 09, 2002 does not meet the requirements of CDRL A004. Furthermore, Axion's letter does not contain any information relative to test procedure, test equipment, or data analysis that pertains to the performance requirements.

The FAT Data Table submitted by Axion is disapproved. A total of 25 out of 66 reserve energizers failed to meet the performance requirements per drawing 11744726. Axion failed to comply with contract modification P00017 that required 120 reserve energizers for FAT. Axion's FAT Data Table provides a tabular listing of all the data files that shows three of the four performance requirements for the reserve energizer and identifies the failed performance parameters for each of the 25 defective reserve energizers.

If I can be of further assistance, contact me at 717-605-2027.

Sincerely,
John Korab
John Korab
Contracting Officer

cc: NSWC, Crane Division

DEPARTMENT OF THE NAVY
NAVAL INVENTORY CONTROL POINT
700 ROBBINS AVENUE
PHILADELPHIA PA 19111-5098
5450 CARLISLE PIKE - PO BOX 2020
MECHANICSBURG PA 17055-0788

IN REPLY REFER TO:

Ser: 0242.6/JK
N00104-96-C-KA09
October 01,2002

BY FACSIMILE

Axion Corporation
P O Box 5366
317 Nick Fitcheard Road
Huntsville, Al 35806

Gentlemen:

Reference is made to contract N00104-96-C-KA09. Item 0001AB, First Article, is disapproved. Pursuant to the First Article Approval-Contractor Testing (SEP 1989) Clause, Para.(A)(d), Axion failed to make delivery.

Since you have failed to perform the subject contract within the time required by the terms thereof, the Government is considering terminating said contract pursuant to Federal Acquisition Regulation (FAR) 52.259-8 entitled "Default." Pending a final decision in this matter, it will be necessary to determine whether your failure to perform arose out of causes beyond your control and without fault or negligence on your part. Accordingly, you are hereby afforded the opportunity to present, in writing, any facts bearing on the question to Commanding Officer, Naval Inventory Control Point, Code 0242.6, 5450 Carlisle Pike, P.O. Box 2020, Mechanicsburg, PA 17055-0788, within ten (10) days after receipt of this notice. Your failure to present any excuses within this time may be considered as an admission that none exits, your attention is invited to the respective rights of the Contractor and the Government under FAR 52.249-8 "Default" and the liabilities that may be invoked in the event a decision is made to terminated for default of the Contractor.
Any assistance rendered to you on this contract or acceptance by the Government of delinquent goods or services hereunder, will be solely for the purpose of mitigating damages, and is not to be construed as any intention on the part of the Government to condone any delinquency, or as a waiver of any rights the Government may have under subject contract.

Sincerely,

John Korab
Contracting Officer

cc: DCMC Birmingham
SBA Atlanta
NSWC Crane Div
NALC 4314A

For Jerry Halare

October 11, 2002

Commanding Officer
Naval Inventory Control Point
Code 0242.6
5450 Carlisle Pike
P.O. Box 2020
Mechanicsburg, PA 17055-0788

RE: Contract N00104-96-C-KA09

Dear Mr. Korab:

In reference to the above contract and your letter received October 1, 2002, Axion Corporation stated that 127 units were put through the required environmental testing and they were tested and witnessed by our local DCAS. From the 127 units tested, we collected 74 units with good data. We intended to send you copies of good data collected. While making copies of the disks, my assistant inadvertently put duplicate files on the disks. It remains the same that 74 good data were collected and submitted. Listed below are the data you have received test by test. In the test number, "r" stands for room temperature, "h" stands for plus140-degree temperature, and "c" stands for minus 40-degree temperature. The first column represents the file name, the second column represents the beginning datum, and the third represents the ending datum.

Disk 1

| | | |
|---|---|---|
| 1 | 13.91 | 21.06 |
| 21hg | 13.91 | 21.11 |
| 104 | .00 | 27.30 |
| 105 | 4.86 | 28.78 |
| 107c | .12 | 24.85 |
| 108r | .00 | 26.23 |
| 109r | 7.00 | 23.47 |
| 110r | 11.53 | 23.09 |
| 112r | 15.32 | 30.40 |
| 11hg | 16.83 | 24.41 |
| 15rg | 19.21 | 26.87 |

| | | |
|---|---|---|
| 45cg | 20.07 | 28.24 |
| 4hg | 7.21 | 23.14 |
| 52rg | 11.53 | 23.09 |
| 55cg | .44 | 30.72 |
| 5cg | 6.34 | 34.15 |
| 66 | 13.91 | 21.06 |
| 66rg | 30.17 | 28.15 |
| 6cg | 4.40 | 41.36 |
| 7cg | 10.01 | 30.61 |
| 89 | .81 | 30.49 |
| 8cg | 12.80 | 29.28 |
| 9cg | 8.83 | 19.53 |

Disk 5

| | | |
|---|---|---|
| 20h | 7.21 | 23.14 |
| 25rg | 26.94 | 26.93 |
| 30c | 5.00 | 26.02 |
| 32rg | 24.38 | 24.38 |
| 33rg | 2.21 | 14.38 |
| 38cg | 2.62 | 29.02 |
| 3cg | 8.01 | 27.94 |
| 41cg | 7.21 | 23.14 |
| 42cg | 8.01 | 27.94 |
| 44cg | 8.01 | 27.94 |
| 48cg | 0.00 | 20.25 |
| 51cg | 6.55 | .00 |
| 57rg | 8.10 | 28.23 |
| 59cg | 0.00 | 30.28 |
| 61 | 5.60 | 29.79 |
| 61h | 21.27 | 31.21 |
| 62rg | 7.92 | 27.85 |
| 72 | 6.96 | 29.66 |
| 82hg | 19.44 | 22.34 |
| 85c | 12.08 | 17.42 |
| 95 | 6.32 | 26.98 |
| 99 | .51 | 34.10 |
| 9c | .00 | 23.43 |

On Friday, September 6, 2002, while we were performing the testing, DCAS had a question that should we test beyond the 120 units that were previously selected by DCAS. We tried to contact you at that time and the chief of our local DCAS was trying to do the same. Axion could have performed the tests very easily since we are now capable of testing four (4) units per hour, when previously the

| | | |
|---|---|---|
| 16cg | 1.38 | 22.25 |
| 17cg | 2.53 | 30.25 |
| 19cg | 5.87 | 28.61 |

Disk 2

| | | |
|---|---|---|
| 113 | 12.29 | 30.72 |
| 114r | .44 | 30.72 |
| 117h | 15.88 | 29.79 |
| 122c | .95 | 30.12 |
| 123h | 21.68 | 29.89 |
| 125r | 12.80 | 21.22 |
| 126r | 20.37 | 27.26 |
| 15rg | 19.21 | 26.87 |
| 16cg | 1.38 | 22.25 |
| 17cg | 2.53 | 30.25 |
| 19cg | 5.87 | 28.61 |
| 20cg | 10.49 | 29.57 |
| 20h | 7.21 | 23.14 |

Disk 3

| | | |
|---|---|---|
| 129r | 11.41 | 29.87 |
| 137 | 6.65 | 29.70 |
| 139 | 13.31 | 25.80 |
| 13rg | 1.82 | 27.19 |
| 140 | 2.00 | 22.67 |
| 14rg | 32.43 | 31.51 |
| 15rg | 19.21 | 26.87 |
| 16cg | 1.38 | 22.25 |
| 17cg | 2.53 | 30.25 |
| 19cg | 5.87 | 28.61 |
| 20cg | 10.49 | 29.57 |
| 22cg | 2.00 | 22.67 |
| 23cg | 13.31 | 25.80 |
| 24 | .37 | 31.20 |

Disk 4

| | | |
|---|---|---|
| 27rg | 6.65 | 29.70 |
| 28rg | 13.57 | 28.41 |
| 29 | 19.93 | 29.51 |
| 32c | 8.83 | 21.07 |
| 35rg | 29.45 | 24.37 |
| 36rg | 11.41 | 29.89 |
| 37rg | 9.33 | 31.41 |

best we could do was five (5) units per day. The question was not if Axion Corporation was capable of performing the test, but if the government would accept a quantity over 120 units. The local DCAS felt it was not necessary to proceed shooting good units and wasting them when 127 units had been shot and approximately 80 good data were collected. Originally, Jerry Hahin stated that a quantity around 80 units would be sufficient. In my conversation with you on Monday, September 9, 2002, you stated you felt that that quantity was adequate. We should not have had to proceed wasting more units.

We believe we performed as required. Should you want us to shoot more units, we would be glad to shoot with one day's notice.

Mr. Korab, in a telephone conversation almost a year ago between you, a governmental lawyer, and me, the government made an offer to Axion Corporation that it would cancel this contract for convenience with no cost to both parties. Axion Corporation could not accept that offer due to the tremendous amount of money invested in this project. Since then, we have invested more money and time in this project without asking for any progress payments. I am not embarrassed to say I have invested all my retirement funds in this project, plus six years of my life. I really don't know what to do any longer. If the government no longer requires these items, I am willing to sit with you and find a resolution by possibly accepting the cancellation of this contract with Axion Corporation receiving a small amount of funds to compensate for all the investments we have made or the government helping us to proceed and finish the project.

I appreciate your help and cooperation in this matter. I would be glad to go to your office to discuss this matter with you further and achieve a mutually amicable resolution. I can be in your office with one day's notice.

Please contact the undersigned at 256-851-8770 should you have any questions or need further information.

Sincerely,

Alex Latifi
President
Axion Corporation

**DEPARTMENT OF THE NAVY**
NAVAL INVENTORY CONTROL POINT

700 ROBBINS AVENUE
PHILADELPHIA PA 19111-5098

5450 CARLISLE PIKE • PO BOX 2020
MECHANICSBURG PA 17055-0788

IN REPLY REFER TO:

Ser 0242.6
N00104-96-C-KA09
June 30, 2003

Axion Corporation
Attn: Alex Latifi, President
317 Litchfield Road
Huntsville, AL 35806

Dear Mr. Latifi:

By letter of June 17, 2003, Axion requested that the Navy consider a deferral of re-payment of $512,365.00 in un-liquidated progress payments due to the termination for default of contract N00104-96-C-KA09 on November 12, 2002.

Subsequently, a letter of March 04, 2003 was sent to Axion and demanded that Axion re-pay the un-liquidated progress payments in the amount of $512,365.00. Axion responded by letter of March 04, 2003 and took exception to the demand letter. The contracting officer sent a second demand letter for re-payment of $512,365.00 in un-liquidated progress payments on March 13, 2003 that included a final decision.

Upon agreement by Axion and the Government, the contracting officer will grant the requested deferral of payment under the following terms and conditions as stated in FAR 32.613(h)(1 through 7, and (i)(1) and (2):

The contract incorporated FAR Clause 52.232-17, Interest, (1991). Axion will be assessed the interest accrued from the date of the March 04, 2003 demand letter.

The re-payment of $512,365.00 shall be sent to: Naval Inventory Control Point-Mechanicsburg, Attn: Code 0242.6 John Korab, 5450 Carlisle Pike P.O. Box 2020, Mechanicsburg, PA 17055-0788. Make the check payable to: DFAS Columbus Center, South Entitlement Operation.

Upon request, Axion shall submit financial information, and give reasonable access to Axion's records and property by Government representatives.

The Government shall have the right to terminate the deferment agreement and accelerate the maturity of the debt if Axion enters into bankruptcy or insolvency proceedings instituted by or against Axion.

The Government shall initiate any protective requirements that are considered prudent and feasible in the specific circumstances.

Axion shall diligently prosecute its appeal to the United States Court of Federal Claims.

Axion shall pay the debt in full when the appeal is decided, or when the Government and Axion reach agreement on the debt amount.



RECEIVED TIME AUG. 5. 11:23AM PRINT TIME AUG. 5. 11:24AM

By signing this agreement, Axion shall be bound to comply with all of the above terms and conditions of this authorization for a deferral of re-payment.

John Korab, Contracting Officer

Signature: John Korab Date: August 5, 2003

Alex Latifi, President, Axion Corp.

Signature: [signature] Date: 8-05-2003

209 A

Q. Is there any connection whatsoever, cause and effect, from the leaking of those -- of the acid that was reported to you by Axion in the decision to hold a second FAT?

A. Yes, that played in my decision to require another second First Article.

Q. And how did it play into your decision?

A. Again, the First Article is required to verify their production process. And so since they were having this manufacturing problem, it was another method to verify that that process was indeed working okay.

Q. Okay. Let's go back to the slides again. Do you have the copy there? What exhibit number is that?

A. Seventeen.

Q. Okay. Let's spend a little time with this. You said you had a discussion with Mister Swank on this, and this briefing was about 1990, is that correct?

A. No, the briefing that I saw was done in 2000.

Q. 2000, okay. Let's just walk our way through this. Could you turn to the first page where it says "At issue". The first fold in

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AXION CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 63-2644C |
| | ) | |
| THE UNITED STATES, | ) | Judge Firestone |
| | ) | |
| Defendant. | ) | |

* * * * * * * * * *

DEPOSITION OF ALEX LATIFI

January 28, 2005
Huntsville, Alabama
9:15 a.m.

ORIGINAL

* * * * * * * * * *

A P P E A R A N C E S

For the Plaintiff: Mr. Richard Raleigh
Wilmer Lee
100 Washington Street
Huntsville, Alabama 35801
and
Mr. Jerome S. Gabig
Attorney at Law
515 Sparkman Drive
Huntsville, Alabama 35816

For the Defendant: Mr. Douglas K. Mickle
United States Department of Justice
1100 L Street N.W.
Room 4062
Washington, D.C. 20005
and
Mr. Rick Martinelli
Assistant Counsel for Naval Inventory Control Point
5450 Carlisle Pike, Bldg. 410
Mechanicsburg, PA 17055



SHOEMAKER & ASSOCIATES
*The Court Reporters*
3077 Leeman Ferry Road, SW
Huntsville, Alabama 35801
(256) 881-8900
1-800-232-6077 Fax: (256) 882-2692

A No problem.

Q -- because I would really like to get a good history of the contract.

A I will be glad to be of any help I can.

Q Well, I appreciate that. Thank you very much.

How long have you served as President of Axion Corporation?

A Since 1984.

Q And what are your duties as the President of Axion Corporation?

A Since the company is small, I do a lot of stuff.

Q What would be some of that stuff?

A I am involved in bidding, production, quality. I oversee most everything.

Q So you are a hands-on manager?

A Yes.

Q And is your primary customer the U.S. Government?

A Yes.

Q And during this time as President of Axion Corporation, has your company grown in size or has it

A Yes, sir.
Q So that's 20 years, and about 10 -- you are involved in 10 Government contracts a year?
A Yes. A very small amount.
Q And what is the dollar value of those contracts, usually?
A From 10,000 to two million.
Q Two million?
A Yes.
Q So this contract that is in dispute right now that was for 1.3 million and change --
A Yes.
Q -- that is an average size contract that you were usually involved with?
A That's the high end.
Q That's the high end?
A Yes.
Q Since this is the first time you have testified in a deposition, am I correct to assume, then, that you are not involved in any other litigation? Or have you ever been involved in any other litigation involving contract disputes?
A No, sir.

Q Was Axion your first job after graduation? It seems like there was a lag --

A No, I worked for another company, Acudata Systems.

Q And what did you do there? I know it says in your resume that you were in charge of the production and the administration of the entire plant.

A Yes.

Q What did that entail?

A That is the same facility. They had a facility in California, and they had a facility in Huntsville. And I started with them as a purchasing agent and later on became chief engineer, and then I became plant manager, and then after three years, I bought the company.

Q And then Acudata became Axion?

A Yes, sir.

Q And from '77 to '84 when you were working with Acudata, were you also involved in Government contracting at that time?

A Yes.

Q So you have basically been involved in Government contracting since 1977?