Nos. 03-2644C & 04-297C
(Judge Firestone)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

AXION CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**AXION'S REPLY IN OPPOSITION TO DEFENDANT'S REPLY TO AXION'S RESPONSE TO THE UNITED STATES' PARTIAL MOTION TO DISMISS, AND DEFENDANT'S OPPOSITION AND RESPONSE TO AXION'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Richard J.R. Raleigh, Jr.
Wilmer & Lee, P.A.
100 Washington Street, Suite 200
Post Office Box 2168
Huntsville, Alabama 35804-2168
256-533-0202 Telephone
256-533-0302 Facsimile

Jerome S. Gabig
4811 Cove Creek Road
Brownsboro, Alabama 35741
256-489-0075 Telephone

Attorneys for Plaintiff

June 27, 2005

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

FEDERAL STATUTES, RULES, AND REGULATIONS ........ iv

PLAINTIFF'S SUPPLEMENTAL APPENDICES ........ v

AXION'S REPLY IN OPPOSITION TO DEFENDANT'S REPLY TO AXION'S RESPONSE TO THE UNITED STATES' PARTIAL MOTION TO DISMISS, AND DEFENDANT'S OPPOSITION AND RESPONSE TO AXION'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ........ 1

I. The Government's Statute Of Limitations Argument Must Fail Because, When Each Of The Seven Counts Are Individually Analyzed, It Is Apparent That, In 1996, Axion Did Not Know All The Facts Establishing The Government's Liability ... 1

II. The Government's Statute Of Limitations Defense Is Fundamentally Flawed Because It Is Predicated On The False Assumption That The Facts Involving The Air Gun "Were Fixed In 1996" ........ 4

III. Not Only Is The Government Wrong About The Burden of Proof Regarding Laches, But Also The Government Has Not Made A Case For Prejudice ........ 7

IV. The Government's Reply Regarding The Lack Of Consideration Cannot Withstand Scrutiny ........ 9

V. The Government Strains Credibility By Asserting "The Record Leaves No Doubt That The Term 01 OCTOBER 03 As Used In P00017 Was Referring To October 3, 2001" ........ 13

VI. The Government Mistakenly States "Axion Also Fails To Note That P00019 Included A Second Form Of Consideration Flowing To Axion In That The Modification Reduced The Number Of PS-115s For First Article Testing From 120 to 80" ........ 14

VII. The Government Implicitly Acknowledges That There Is A Genuine Issue Of Material Fact Whether Korab Knew That Latifi Made A Unilateral Mistake When He Agreed To The Accord and Satisfaction Provisions In P00017, P00019, And P00020 ........ 15

VIII. The Government Did Not Address Plaintiff's Motion For Partial Summary Judgment That The Accord And Satisfaction Provisions Do Not Apply To Counts II, III, IV, V, VI, VII, IX, XII, XV, XVI, And XVIII Because The Government Has No Credible Basis To Dissuade This Court From Granting Plaintiff's Motion .........18

## TABLE OF AUTHORITES


CASES PAGE(S)

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (2005)........................................9, 14

*Aviation Contractor Employees, Inc. v. United States*,
945 F.2d 1568 (Fed. Cir. 1991)..........................................................................13

*C & H Commercial Contractors, Inc. v. United States*,
35 Fed. Cl. 246 (1996)......................................................................................19

*CW Government Travel, Inc. v. United States*,
61 Fed. Cir. 559 (2004)......................................................................................7

*Central Pines Land Company v. United States*,
61 Fed. Cl. 527 (2002)......................................................................................7, 9

*Freedom NY, Inc.*,
ASBCA No. 43965, 01-2 BCA ¶ 31,585..............................................................11

*Goltra v. United States*,
119 Ct. Cl. 217, 96 F. Supp. 618 (1951)..............................................................12, 13

*Rumsfield v. Freedom NY. Inc.*,
329 F.3d 1320 (Fed. Cir. 2003)..........................................................................11

*Scheuer v. Rhodes*,
416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)..........................................2

*The Boeing Company*,
ASBCA No. 52,256, 02-1 BCA ¶ 31, 811..............................................................19

## FEDERAL STATUTES, RULES, AND REGULATIONS

PAGE

FAR 15.406-3 ....................12

FAR 33.201 ....................1

FAR 52.245-18 ....................2

## PLAINTIFF'S SUPPLEMENTAL APPENDICES

PSA 1 Axion Production Progress Report, DD Form 375C, May 7, 1997

PSA 2 April 2, 1998, Ltr from C.O. re: First Article Inspection Procedures

PSA 3 May 14, 1998, Ltr from C.O. Approving Axion's First Article Inspection Procedure

PSA 4 Deposition of Jerry Hahin Page 110

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AXION CORPORATION,** | ) | |
| *Plaintiff,* | ) | |
| v. | ) | **No. 03-2644C & 04-297C** (Judge Firestone) |
| **THE UNITED STATES,** | ) | |
| *Defendant.* | ) | |

**AXION'S REPLY IN OPPOSITION TO DEFENDANT'S REPLY TO AXION'S RESPONSE TO THE UNITED STATES' PARTIAL MOTION TO DISMISS, AND DEFENDANT'S OPPOSITION AND RESPONSE TO AXION'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

**COMES NOW** Plaintiff, Axion Corporation ("Axion"), and submits this brief, in opposition, to Defendant's Reply to Axion's Response to the United States' Partial Motion to Dismiss, and Defendant's Opposition and Response to Axion's Cross-Motion for Partial Summary Judgment. For reasons set forth herein, this Honorable Court should deny Defendant's ("United States" or "Government") motions, and should grant Axion's Cross-Motion for Partial Summary Judgment.

**I. The Government's Statute Of Limitations Argument Must Fail Because, When Each Of The Seven Counts Are Individually Analyzed, It Is Apparent That, In 1996, Axion Did Not Know All The Facts Establishing The Government's Liability**

Pursuant to FAR 33.201, a claim accrues on the date when all events which fix the alleged liability of the Government are known or should have been known to Axion. In Axion's Response to Defendant's Motion to Dismiss, Axion explained that the Government's Motion to

Dismiss[1] must fail because the Government did not provide "any analysis of these distinct Counts." *See* Axion's Response to the Government's Partial Motion to Dismiss ("Axion's Response") at 1-2. In its Reply, rather than correct the flaw in its motion, the Government again did not provide any analysis for the seven Counts to which the Motion to Dismiss applied.

The Government did not correct the defect because there are material facts in dispute which preclude judgment for the Government. In its Response, from pages 11 to 23, Axion meticulously demonstrated, for each of the seven counts, that not all the facts which fix the Government's liability under that particular count were known to Axion in 1996. The Government has completely failed to address each of the occasions showing that the Government's motion lacks merit.

Before any count can be dismissed, Defendant must establish "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). As summarized below, the facts in the record that pertain to these seven Counts are contrary to the Government's assertion.

**a. Count XVI**

Count XVI seeks an equitable adjustment claim relating to Axion's attempt to fabricate a commercially impractical air gun. Defendant does not present a single fact that, in 1996, Axion knew or should have known that the air gun was commercially impractical. However, Axion presents facts to the contrary. *See* Axion's Response at p. 11.

**b. Count XVIII**

Count XVIII seeks payment under FAR 52.245-18 for Axion's work in fabricating the air

---

1 The United States' Motions to Dismiss relate only to Counts XVII, XVIII, XXVI,

gun. Axion did not undertake fabricating the air gun in 1996. *See* Argument II, *infra.* There was no claim until 2003, when the routine request for payment was deemed denied. Conversely, Defendant has not come forth with a single fact establishing that, in 1996, Axion knew or should have known about a claim.

**c. Count XXI**

Count XXI seeks an equitable adjustment claim relating to the Government's superior knowledge regarding the air gun. Defendant does not present a single fact that, in 1996, Axion knew or should have known about the Government's superior knowledge. However, Axion presents facts to the contrary establishing that Axion was not aware of the Government's superior knowledge until after the contract was terminated for default. *See* Axion's Response, pp. 17-18.

**d. Count XXII**

Count XXII seeks an equitable adjustment claim relating to the Government misleading Axion concerning the significant amount of development work required for the air gun. Defendant has not presented any evidence that, in 1996, Axion knew or should have known that the air gun would require a significant amount of development work. However, Axion presents facts to the contrary. *See* Axion's Response at pp. 18-20.

**e. Count XXIII**

Count XXIII seeks an equitable adjustment claim relating to the Government's breach of its implied warranty that the air gun would either be commercially available or a non-developmental item. Defendant has not demonstrated that, in 1996, Axion knew or should have known that the Government had breached this implied warranty. However, Axion presents facts

---

XXI, XXIII, XXIV, and XXV.

to the contrary. *See* Axion's Response at pp. 20-21.

**f. Count XXIV**

Count XXIV seeks an equitable adjustment claim relating to the Government's breach of its duty to cooperate regarding the fabrication of the air gun. Defendant does not present a single fact regarding Axion's Allegations in Count XXIV. Axion had not even begun to fabricate the air gun in 1996. *See* Argument II, *infra.* Therefore, Axion's claim against the Government for the Government's failure to cooperate could not be "fixed" in 1996.

**g. Count XXV**

Count XXV seeks an equitable adjustment regarding a mutual mistake that the air gun required a significant development effort. Defendant cannot present a single fact that, in 1996, Axion knew or should have known that the air gun would require a significant development effort. In fact, Axion did not begin fabricating the air gun in 1996. *See* Argument II, *infra.* Moreover, the Government's engineer testified that, at the time of award, the Navy did not anticipated that Axion would have to perform a significant development effort. *See* Axion Response at 23.

## II. The Government's Statute Of Limitations Defense Is Fundamentally Flawed Because It Is Predicated On The False Assumption That The Facts Involving The Air Gun "Were Fixed In 1996"

The Government's statute of limitations defense for Counts involving the air gun is fundamentally flawed because the defense is predicated on the false assumption that "Axion's claims for equitable adjustment are based upon a related set of facts, facts that were fixed in 1996." *See* Defendant's Reply at 7. As shown below, in 1996, Axion had no contractual obligation to fabricate an air gun. Axion's obligation to fabricate an air gun began 1998.

Defendant correctly states that "[t]he contract is clear, Axion was required to produce PS-

115 batteries, not an air gun." *See* Defendant's Reply at 5. The contract did not state that an air gun was required for testing. *See* Defendant's Counter-Statement of Facts ("Defendant's CSF") ¶ 23. However, the contract did make Axion responsible for testing the PS-115s. Defendant's CSF ¶ 23. Specifically, the contract stated: "[T]the contractor shall provide all AIE (Acceptance Inspection Equipment) … necessary to assure conformance of components and end items to contract requirements. All such equipment shall be subject to approval by the Government…." Contract p. 97. Government approval for the AIE was to be established through Contract Data Requirements ("CDRL") List A003 "First Article Test Procedures." DA 71.

In 1996, Axion was aware of the following alternatives for how it could meet its requirements to test the PS-115s: (a) ask the Government to provide an air gun, *see* Defendant's CSF ¶ 31; (b) obtain the drawings to the air gun used by the Army Research Laboratory ("ARL") and fabricate an air gun using those drawings, *see* Defendant's CSF ¶ 33; (c) negotiate with the ARL to test the PS-115s, *see* Plaintiff's Supplemental Appendix ("PSA") 1; or (d) explore using a spin gun – a less complex and expensive piece of test equipment than an air gun. *See* PA E at ¶ 3.

In 1996, Axion was told that the Government would not provide an air gun. Defendant's CSF ¶ 31. Axion then sought the drawing for the air gun from ARL. Axion negotiated with ARL to obtain a copy of the drawings. Defendant's CSF ¶ 33. Axion sent a check to ARL to pay for the drawings. Defendant's CSF ¶ 34. However, in 1997, ARL declined to sell the drawings for "legal reasons." Defendant's CSF ¶ 35.

Therefore, in 1997, since Axion did not have the drawings for the air gun, Axion sought to meet its contractual obligation to test the PS-115 by negotiating with ARL to test the PS-115s. Consistent with CDRL List A003 "First Article Test Procedures, Axion's initial submission

under CDRL A003 was to have the ARL Harry Diamond Laboratory perform the testing:

> Axion's vendor who was approved in our Inspection/Text CDRL A003, will no longer perform the required Spin Testing in a reasonable time frame. They now say they can only test 4 or 5 units a day. There are 360 united to be Tested (destructively) which would require several months for them to perform .... This vendor is Harry Diamond Labs, which is a Government Laboratory....

*See* Axion Production Progress Report, DD Form 375C, May 7, 1997, PSA 1, attached hereto.

As shown in the Progress Report to the contracting officer, in 1997, the Government approved Axion's plan to have the testing of the PS-115s performed by ARL. *Id.* In light of the fact that the parties had agreed, in 1997, that the testing was to be performed by ARL, there was obviously no reason (or duty), at that time, for Axion to fabricate an air gun. Therefore, contrary to Defendant's assertion that the facts involving the air gun were "fixed" in 1996, in 1997 neither of the parties expected that Axion would fabricate an air gun.

Finally, after notifying the Contracting Officer in May 1997 that it was no longer feasible to have the PS-115s tested by ARL, Axion investigated using a spin gun. As explained by Latifi in his deposition, a spin gun would have been less complex and less expensive than an air gun:

> Q: -- you said the "spin gun," we are talking about the air gun?
> A: Yes. We don't know at this time—oh—
> Q: Pardon?
> A: At this time we think that the spin gun will do the test. Since the Government not give us the gun – now we think it is possible to produce the gun at a very reasonable price—a reasonable price—which is a spin gun – you have to spin the part – at a reasonable price. And we try to do it very simple.

Latifi Depo. at 102, PA D.

The reluctance of the Navy to approve a spin gun can be found in a letter dated April 2, 1998, from the Contracting Officer which references "First Article Inspection Procedures." In the letter, Korab asks questions about the "bird" and "vacuum punch" to assure than Axion would be fabricating an air gun and <u>not a spin gun</u>. *See* PSA 2 attached hereto. Hence, contrary

to Defendant's assertion that the facts involving the air gun were "fixed" in 1996, the record shows that in 1998, there was uncertainty whether the Navy would require an air gun, or would accept a spin gun rather than an air gun.

It was not until 1999, that the "facts were fixed" that Axion would use an air gun for the testing, and would have to manufacture an air gun in order to do the testing. Specifically, on May 14, 1998, the Contracting Officer approved Axion's First Article Inspection Procedure. PSA 3, attached hereto. This First Article Inspection Procedure was predicated upon Axion fabricating an air gun.

In summary, the record does not support the Government's assertion that the facts "were fixed in 1996." Instead, it was not until 1998 that Axion committed to test the PS-115s using an air gun that Axion would have to fabricate. Simply put, the Government's assertions regarding the facts being fixed in 1996 "leave the Court with too many unanswered questions to justify a judgment on the pleadings." *Central Pines Land Company v. United States*, 61 Fed. Cl. 527, 539 (2002).

## III. Not Only Is The Government Wrong About The Burden of Proof Regarding Laches, But Also The Government Has Not Made A Case For Prejudice

The heading in Defendant's Reply states "Axion Has Failed To Demonstrate That Counts XVII, XVIII, XXI, XXII, XXI, XXII, XXIII, XXIV, and XXV Of Its Complaint Are Not Barred By The Doctrine Of Laches." Defendant's Reply at 15. Defendant is confused. It is the Government that has the burden of proof on this affirmative defense: "[t]he burden of proof is on the party that raises the affirmative defense, here, the Government. When raising the laches defense in the summary judgment context, the defendant must also establish that there are no genuine issues of material fact with respect to either delay or prejudice." *CW Government Travel, Inc. v. United States*, 61 Fed. Cir. 559, 568 (2004) (citations omitted).

Axion Response consisted of two arguments. First, "[t]he Government has failed to identify an evidence of prejudice." Axion Response at 24. Second, "[l]aches, as a doctrine of equity, is not available to the Government because it has unclean hands." *Id.*

In attempt to establish prejudice, the Government asserts: "Latifi himself said under oath that he could not remember key events because they occurred so long ago. DA 285, 314, 368A, 368B. Strickrod, the Government's Quality Assurance Representative, Hahin, and Korab, the contracting officer, also had difficulty trying to recall events that occurred almost a decade ago. *See generally*, DA 369-394." Defendant's Reply at 16.

Defendant confuses "lack of recollection" with "prejudice." For example, "lack of recollection" is not prejudicial if contemporaneous documents are available. Simply put, to prove prejudice, Defendant needed to identify a specific element of a claim and how the "lack of recollection" prejudiced Defendant regarding that specific element. In such an instance, Defendant might have had a credible argument to assert laches for that specific claim. Here, however, the Government's broad statements that the witnesses had difficulty recalling some unidentified events without showing why the lack of recollection resulted in prejudice is insufficient for the doctrine of laches to apply.

Concerning Axion's assertion that the Government was not entitled to assert the defense of laches because of the Government's lack of "clean hands," Axion cited as examples: Count XXI (Defendant's Superior Knowledge Of Air Gun), Count XXII (Defendant Misled Axion About Air Gun), and Count XXIV (Defendant's Breach of Implied Duty To Cooperate). Axion Response at 24.

Unwilling to address Counts XXI, XXII, and XXIV, the Government merely states "there is no evidence that the Government has 'unclean hands' in any of its dealing with Axion,

regardless of issue." *See* Defendant's Reply at 16. Once again, the Government's empty assertions "leave the Court with too many unanswered questions to justify a judgment on the pleadings." *Central Pines Land Company v. United States*, 61 Fed. Cl. 527, 539 (2002).

## IV. The Government's Reply Regarding The Lack Of Consideration Cannot Withstand Scrutiny

The Government's reply regarding the lack of consideration cannot withstand scrutiny. The following is an extract of the Government's reply:

> While the parties disagree as to why Axion failed to deliver pursuant to P00016, it cannot be disputed that Axion did not comply with the delivery schedule set forth in modification P00016 when the parties agreed to P00017. Pl Resp. 26-27. Thus Axion was at risk of termination for default for failing to meet the August 8, 2001 delivery requirement of modification P00016. In agreeing to P00017 schedule extension, the Government provided consideration to Axion in that it relinquished its ability to terminate the contract for default at that time.

Defendant's Reply at 17.

The Government clearly acknowledges "the parties disagree as to why Axion failed to deliver pursuant to P00016." Summary judgment is only appropriate were there are no genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (2005). Here, Defendant essentially acknowledges that there are genuine issues of material fact.

After essentially acknowledging genuine issues of material fact, the Government continues "it cannot be disputed that Axion did not comply with the delivery schedule set forth in modification P00016 when the parties agreed to P00017." Axion is surprised that the Government would make such a representation. This matter is very much in dispute.[2] Axion

---

[2] Axion's Response stated: "The United States argues that the Navy obtained a right to terminate Axion for default as a result of 'missing the deadline' of delivering 8000 units on August 8, 2001. As established in Argument IV(A)(2) above, the Government had no right to