**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AXION CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 03-2644C & 04-297C** |
| **v.** | ) | **CONSOLIDATED** |
| | ) | |
| **THE UNITED STATES,** | ) | **(Judge Firestone)** |
| | ) | |
| **Defendant.** | ) | |

**JOINT STIPULATION FOR DISMISSAL**

To settle and dismiss the claims asserted in the complaints, it is stipulated and agreed between the parties:

1. On December 14, 1995, the Naval Inventory Control Point ("NAVICP") confirmed its award of contract N00104-96-C-KA09 ("contract") to Axion.

2. The contract required delivery of 55,209 PS-115s exclusive of first article samples, production lot samples, and option quantities.

3. The PS-115 is a battery used in Navy munitions.

4. The contract was a firm-fixed price contract.

5. The contract's unit price was $23.80, and the total price, exclusive of option quantities, was $1,313,974.20.

6. The contract included a First Article Test ("FAT") requirement.

7. The purpose of FAT is to ensure that the contractor can furnish a product that conforms to all contract requirements for acceptance.

8. While performing under the contract, Axion experienced problems associated with an air gun it built to use for testing the PS-115, the PS-115 plating, and leakage of the acids within the PS-115.

9. Axion's contract with the Navy contained a clause that established that a contractor shall be deemed to have failed to make delivery within the meaning of the default clause if FAT testing is disapproved.

10. On November 12, 2002, NAVICP issued contract modification P00021 which terminated the contract for default upon the basis of contracting officer's disapproval of Axion's FAT.

11. Axion received $512,365 of progress payments under the contract, none of which has Axion repaid.

12. On August 5, 2003, Axion and NAVICP entered an agreement under which Axion's obligation to repay the $512,365 of progress payment was deferred until resolution of Axion's soon to be filed action in the United States Court of Federal Claims.

13. On November 6, 2003 and March 4, 2004, Axion filed complaints with the Court of Federal Claims challenging the termination for default and raising numerous compensation claims totaling in all 29 counts, and the Court consolidated the complaints pursuant to an April 22, 2004 order.

14. Axion sought a conversion of the termination for default to a termination for convenience and a monetary recovery of $4,259,663.

15. On January 25, 2007, the Court issued an opinion in which 28 of Axion's 29 claims were dismissed. Axion v. United States, 75 Fed. Cl. 99 (2007).

16. The remaining count involves the duty to cooperate as it relates to interactions between the Government's Quality Assurance Representative ("QAR"), the contracting officer, and Axion during the period immediately preceding the conclusion of FAT.

17. Axion has offered to dismiss the case with prejudice, forego any appeal of the Court's prior decisions in this matter, and release the Government from all claims arising under or related to the contract. In return, the United States would waive repayment of $512,365 in progress payments and also would relinquish its rights under the progress payments and termination for default clauses to any material or equipment that Axion acquired or produced in attempting to perform. Each side will bear its own costs and fees. Furthermore, Axion acknowledges the Government will not make any payment to Axion, including, but not limited to, any payment for interest that may have accrued upon the claim. Axion also agrees that it will not file any termination for convenience settlement claim, including but not limited to, any claim for settlement expenses, arising out of or related to the contract and termination conversion. Similarly, pursuant to the settlement agreement, the United States will not pay Axion any expert witness fees or any other costs associated with or otherwise relating the contract, to the filing of the certified claim, the filing of the complaints, discovery in this case, or the Alternate Disputes Resolution process. Axion also agrees that it remains responsible for complying with all statutes and regulations applicable to the material and equipment it is retaining. Finally, the United States agrees that it will convert its termination for default decision to one for convenience.

18. Axion's offer has been accepted by the United States through an authorized representative of the Attorney General.

19. Axion releases, waives, and abandons all claims against the United States, its political subdivisions, its officers, agents, and employees, arising out of or related to the contract or otherwise involved in this case, regardless of whether they were included in the complaint,

including, but not limited to, all claims for costs, expenses, attorney fees, compensatory damages, and exemplary damages.

20. Upon entry of judgment, the United States releases, waives and abandons all claims against Axion arising out of or related to the contract or otherwise involved in this case, except for fraud and any claims reserved by statute.

21. This stipulation is in no way related to or concerned with income or other taxes for which Axion is now liable or may become liable in the future as a result of this stipulation or as a result of entry of a final judgment.

22. Axion warrants and represents that no other action or suit with respect to claims arising under or related to the contract, including but not limited to, all claims advanced in this suit, is pending or will be filed in or submitted to any other court, administrative agency, or legislative body. Axion further warrants and represents that it has made no assignment or transfer of all or any part of its rights arising out of or relating to the claims advanced in this suit. Should there be now or in the future any violation of these warranties and representations, Axion's recovery pursuant to this stipulation or pursuant to any judgment entered pursuant to this stipulation shall be refunded promptly by Axion, together with interest thereon at the rates provided in 41 U.S.C. § 611, computed from the date of this stipulation.

23. This stipulation is for the purposes of settling this case as set forth above and permitting entry of final judgment. Accordingly, this stipulation shall not bind the parties, nor shall it be cited or otherwise referred to, in any proceedings, whether judicial or administrative in nature, in which the parties or counsel for the parties have or may acquire an interest, except as is necessary to effect the terms of this stipulation.

24. Plaintiff's counsel represents that he has been and is authorized to enter into this stipulation upon behalf of Axion. Defendant's counsel represents that he has been and is authorized to enter into this stipulation upon behalf of the United States.

25. This document constitutes a complete integration of the stipulation between the parties and supersedes any and all prior oral or written representations, understandings or agreements among or between them.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/ Richard J.R. Raleigh, Jr.
RICHARD J.R. RALEIGH, JR.
Wilmer & Lee, P.A. Trial Attorney
100 Washington Street, Suite 200
Huntsville, Alabama 35801
Tele: (256) 533-0202

OF COUNSEL:
MARCUS A. HUFF
Wilmer & Lee, P.A.

Attorneys for the Plaintiff

DATED: May 17, 2007

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0383

OF COUNSEL:

Richard Martinelli
Office of Counsel
Naval Inventory Control Point
Mechanicsburg, PA 17055-0788

Attorneys for the Defendant

DATED: May 18, 2007